**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **TARONDRICK FLOYD, #297845,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| **FRANK SIZER, COMMISSIONER J.** | * | Civil No. PJM 03-3154 |
| **MICHAEL STOUFFER, WARDEN LT.** | * | |
| **WIEBRECT, INVESTIGATIVE LT. LT.** | * | |
| **KEPLINGER, HOUSING MANAGER** | * | |
| **LT. HOLMAN, ARP COORDINATOR** | * | |
| **OFC. MCKINLEY, CO II,** | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

On November 4, 2003, Plaintiff Tarondrick Floyd, a former inmate at the Maryland Correctional Training Center (the "Center" or "MCTC"), filed a *pro se* action pursuant to 42 U.S.C. § 1983, alleging that several Defendants, guards and supervisors at the Center, used excessive force against him and failed to protect him against potential assault at the hands of fellow prisoners while he was incarcerated at the Center.  Floyd's excessive force claim against all Defendants was dismissed by the Court by Memorandum Opinion and Order dated September 10, 2004.  Only his failure to protect claim against Correctional Officer William K. McKinley remained intact. All other Defendants were dismissed from the case.  The Court appointed counsel for Floyd shortly thereafter.

The case now is before the Court on McKinley's Motion to Dismiss or, in the alternative, Motion for Summary Judgment.  Because McKinley has cited evidence outside the four corners of the Complaint, his Motion will be treated as a Motion for Summary Judgment.  *See* Fed. R. Civ. P.

12(b).  Having treated it so, the Court concludes that the Motion should be GRANTED.[1]

## I.

The Court extensively addressed the facts of this case in its September 10, 2004 Memorandum Opinion.  Accordingly, only a brief summary is necessary here.

Floyd alleges that on October 1, 2003, he was assaulted by three MCTC correctional officers, including McKinley.  He claims that he wrote letters to prison officials following the attack.  He also alleges that after discovering that he had filed administrative remedies regarding the incident, McKinley retaliated against him by falsely informing other inmates that he was a "snitch."  Floyd claims that he learned of this falsehood from another inmate named Rasheed, and that soon after he started receiving death threats through the mail. Floyd further suggests that McKinley gave a prisoner "hit man," Jermaine Holland, one-half or one full can of tobacco to stab him.  Floyd's source of this information was Holland himself.  Floyd acknowledges that while Holland did not go through with the alleged "hit," Floyd nonetheless remained fearful based on the foregoing events.  Floyd also asserts that he believed McKinley paid members of the United Blood Nations gang to stab both him and Holland after the first "hit" was unsuccessful.

The prison file provided by McKinley shows that on October 1, 2003, Floyd was seen by a segregation classification team based on his claim that he was in danger because he was a member of the "Crips" gang and that a hit had been placed on him for stabbing a "Blood" gang member. Floyd indicated that he would have to carry a knife if he was to remain in general population. As a result, he was placed on a transfer list and assigned to administrative/disciplinary segregation.  In December 2003, Floyd signed a waiver for protective custody, indicating that he did not feel his life

---

[1]
         Accordingly, McKinley's Motion to Dismiss is MOOT.

was in danger and that he wanted to return to general population.  He remained assigned to segregation until January 12, 2004, but on January 28, 2004, he was transferred to the Western Correctional Institution.

Floyd's medical records from October 1, 2003 through January 28, 2004, reflect a medical consultation on October 1, 2003, the day of the alleged incident with McKinley, in which Floyd received medical attention for his arm.  After he was examined and found to be without serious injury, Floyd was given Tylenol for his discomfort.  His next sick call request was on October 22, 2003, where he reported a need for glasses. Subsequent reports fail to disclose any injuries to Floyd as a result of altercations or examinations resulting from stress or concern for his safety.

It is undisputed that Floyd was never physically assaulted or injured by another inmate at MCTC following his October 1, 2003 encounter with McKinley.  On deposition Floyd testified that he did not believe that he ever discussed these allegations with McKinley or that he personally overheard the communications allegedly made by McKinley and that, in fact, he does not remember having any direct contact with McKinley after their encounter on October 1, 2003.

## II.

In order to survive a defendant's properly supported motion for summary judgment, a plaintiff is required to produce some evidence to support each of his constitutional claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Where all of the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Id.* at 322. While the facts and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985),

"when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Therefore, statements based solely on information and belief do not satisfy the requirements of Rule 56. *See, e.g.*, *Minn. Mining & Mfg. Co. v. United States Rubber Co.*, 279 F.2d 409, 415 (4th Cir. 1960). Likewise, inadmissible hearsay statements do not meet Rule 56's standards. *See, e.g.*, *Greensboro Professional Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962 (4th Cir. 1995). Only disputed issues of material fact will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.

Floyd complains that his right to be free from cruel and unusual punishment has been violated due to the prison officials' failure to protect him from serious injury by another prisoner. The Eighth Amendment does recognize this right. *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990). As noted by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 833 (1994),

> Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

In a failure to protect claim, a prisoner must show, first, that the harm he suffered was objectively serious, and second, that prison officials acted with deliberate indifference. *Id.* at 834. However, not "every injury suffered by one prisoner at the hands of another . . . translates into

4

constitutional liability for prison officials responsible for the victim's safety." *Id.*

## A.

The undisputed record reveals that while Floyd claims to have feared for his safety as a result of McKinley's alleged actions, the harm he suffered was not serious. Floyd, it is true, argues that he suffered an actionable "serious or significant . . . emotional injury," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Yet his deposition testimony and pleadings reflect only that he was "kind of" fearful for his safety; that he remained on administrative segregation away from potential threats of the general inmate population from October 1, 2003 to January 12, 2004; that he was only exposed to the general population for two weeks based at his own request; and that his exposure to general population went forward without incident. Not only did Floyd experience no altercations; his medical records fail to reflect any injury or emotional distress stemming from fear of injury. Based on his own recitation of the facts, therefore, Floyd's complaint of emotional distress does not rise to the level of a constitutional violation.

Floyd also alleges injury due to McKinley calling him a "snitch." Courts have held that, in certain circumstances, prison officials may be held liable for labeling an inmate a "snitch." *See Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138-39 (9th Cir. 1989); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984)(per curiam); *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981). However, even accepting this allegation as true, it does not rise to the level of a constitutional violation. The inescapable dispositive fact is that Floyd was never exposed to retaliation or a risk of assault. At his own request, he was placed in segregation at the direction of the warden on the same day as the purported statement by McKinley. When Floyd was returned to the general population for two weeks prior

to his transfer to another facility, it was because of his own belief that he was no longer at risk.

Floyd has failed to demonstrate any objective injury (emotional or physical) to satisfy the first prong of the *Farmer* test.

## B.

Floyd has likewise failed to satisfy the element of deliberate indifference.  In the context of a failure to protect claim, deliberate indifference means that a defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy.  *Rich v. Bruce*, 129 F.3d 336, 339?40 (4th Cir. 1997); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) ("[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact  that prison officials were therefore deliberately indifferent to his safety.")  A prison official is deliberately indifferent when he possesses actual, subjective knowledge of an excessive risk of harm to the prisoner's safety and disregards it. *Farmer*, 511 U.S. at 837-39.  In the present case, Floyd relies entirely on hearsay, his own say-so and speculation to support his claim that McKinley demonstrated deliberate indifference – or worse, intended – harm to him.

First, Floyd quotes a statement made to him by another inmate, Rasheed, to support his claim that McKinley labeled him a "snitch."  Anticipating a hearsay objection, Floyd suggests that this qualifies either as an admission of a party opponent under FRE 801(d)(2) or as a statement not offered for the truth of the matter under FRE 801(c).   But Floyd misapprehends the

hearsay/nonhearsay issue.  It does not arise in connection with what McKinley purportedly said to Rasheed.  The hearsay lies in the fact that Rasheed, who heard McKinley made the allegedly nonhearsay statement, has not himself made an affidavit to that effect. When Floyd repeats anything that Rasheed "heard said," but Rasheed himself is not personally present to do so, Floyd is offering the hearsay.[2]

Floyd also relies on a statement made to him by inmate Jermaine Holland to support his allegation that McKinley paid Holland to stab Floyd.  This statement, however, suffers from the same fatal hearsay problem as the purported Rasheed statement.   Floyd, not Holland, is offering a statement Holland allegedly heard said.

Finally, Floyd alleges that he received threatening letters from other inmates after he was allegedly labeled a "snitch," and says he believes that McKinley paid members of the United Blood Nations gang to stab both him and Holland after the first "hit" was unsuccessful.   Apart from the fact that Floyd has not retained any of the supposed letters nor offered any evidence to support his allegation of a second attempted "hit," his own conclusory statements are insufficient as a matter of law to survive a motion for summary judgment.  *See, e.g.*, *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). [3]   In sum, Floyd has not met his burden of showing

---

[2]
      Indeed, the Court notes, *inter alia*, that Floyd is vague about whether Rasheed actually "heard" McKinley call Floyd a "snitch" or whether he heard that McKinley was calling Floyd a "snitch."  If the latter, the hearsay problem would obviously be compounded.

[3]
      The Court notes that Floyd's prison file shows that he sought administrative segregation due to his belief that his safety was in danger because a hit had been placed on him for stabbing a "Blood" gang member. The Court fails to see how this would have any connection with anything McKinley is supposed to have done.

McKinley's deliberate indifference. [4]

## IV.

For the foregoing reasons, McKinley's Motion for Summary Judgment will be GRANTED.

A separate Order will issue.


**March 31, 2006**                                          /s/
                                        **PETER J. MESSITTE**
                                  **UNITED STATES DISTRICT JUDGE**

---

[4]

       Floyd also asserts that McKinley retaliated against him.  As with his claim of failure to protect, Floyd has failed to assert this claim on more than "wholly conclusory terms." *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987). Therefore, that claim "may safely be dismissed on the pleading alone." *Id.*

       Because the Court finds that all of Floyd's claims fail as an evidentiary matter, it need not address McKinley's defenses of qualified immunity and protection under the Prison Litigation Reform Act.